

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR -8 P 2:02

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF THE                          CIVIL ACTION
COMPLAINT OF TEXAS
CREWBOATS, INC., AS                           NO. 04-1231
OWNER OF THE M/V FLORIDA
LILLY, FOR EXONERATION                        SECTION "C"
FROM OR LIMITATION OF LIABILITY

### ORDER AND REASONS

Before the Court is a motion (Rec. Doc. 23) by claimants Jimmy Satterfield and Dixie Clanton ("claimants") to dismiss the limitation of liability complaint filed under 46 U.S.C. § 183 by Texas Crewboats, Inc. (TCI). Claimants contend that this Court lacks subject matter jurisdiction pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure. For the following reasons, the claimants' motion is **GRANTED**.

I. Background[1]

TCI is the owner of the crew-supply vessel, the M/V Florida Lilly ("the Lilly" or "the ship"). (Rec. Doc. 5, p. 1). Claimants were employed by TCI, assigned as

---

[1] In ruling on the motion to dismiss, the Court has relied on the complaint supplemented by undisputed facts evidenced in the record. See Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

___ Fee_____
___ Process_____
_X_ Dktd_____
___ CtRmDep_____
___ Doc. No._____

crewmembers on the Lilly. Id. On October 9, 2003, claimants were riding in a 2001 Chevrolet Suburban ("the vehicle") from TCI facilities in Freeport, Texas to Morgan City, Louisiana to start a new hitch aboard the Lilly. (Rec. Doc. 23, p.1; see also Rec. Doc. 25, p.2). The vehicle was owned by TCI and driven by William J. Sylvester, also a TCI employee. While en route to the ship, the vehicle was involved in an accident, allegedly causing injuries to each claimant. (Rec. Doc. 25, p. 2). The claimants allege that the accident happened because Sylvester fell asleep at the wheel. (Rec. Doc. 23, p. 1-2). Although TCI does not address specifically what caused the accident, there is no allegation of any connection between the accident and the ship. That is to say, TCI does not dispute that the catalyst for this litigation is a routine car accident that occurred before claimants had begun their hitch on the Lilly. (See generally Rec. Doc. 25). As a result of the accident, TCI filed a complaint for exoneration from or limitation of liability on April 29, 2004, (Rec. Doc. 1), which it subsequently amended on May 14, 2004 (Rec. Doc. 5). Claimants have moved to dismiss that complaint.

II. Law and Analysis

Claimants are correct that the Limitation of Liability Act does not itself confer jurisdiction on the federal courts. Guillory v. Outboard Motor Corp., 956 F.2d 114 (5th Cir. 1992). Thus, the authority to hear this case must come from some independent basis that supports the assertion of admiralty and maritime jurisdiction. It is TCI's burden to show that jurisdiction in fact exists. H. Raming v. United States, 281 F.3d 158 (5th Cir. 2001).

2

The Constitution extends federal judicial power "to all Cases of admiralty and maritime jurisdiction." U.S. CONST. art. III § 2. Congress has explicitly granted federal courts the power to take "original jurisdiction . . . of . . . [a]ny civil case of admiralty or maritime jurisdiction. . . ." 28 U.S.C. § 1333(1).

Throughout history, Congress and the Supreme Court have continuously reshaped the scope of the federal judiciary's authority to hear admiralty cases. See, e.g. Grubart, Inc. v. Great Lakes Dredge & Dock, 513 U.S. 527, 532 (1995) (describing history of admiralty jurisdiction); Executive Jet Aviation, Inc. v. Cleveland, 409 U.S. 249 (1972); Foremost Insurance Co. v Richardson, 457 U.S. 668 (1982); Sisson v. Ruby, 497 U.S. 358 (1990). Presently, in order to invoke federal admiralty jurisdiction under 28 U.S.C. 1333(1), a party must satisfy each of the so-called "location" and "connection"[2] tests. Grubart, 513 U.S. at 534; see also In re Madison Coal & Supply Co., Inc., 321 F.Supp.2d 809, 812 (S.D.W.Va. 2003)("Failure to establish either the location or the connection test is fatal to an assertion of admiralty jurisdiction."). TCI has failed to satisfy both the location and connection tests and this Court therefore lacks jurisdiction over the subject matter of this case.

A. Location Test

The facts of this case fail to meet the location test. The test, which emerges from the 1948 Extension of Admiralty Jurisdiction Act, asks "whether the tort occurred on navigable waters or whether injury suffered on land was caused by a vessel on navigable

---

[2] The "connection" test is often referred to as the "nexus" test. See, e.g., Complaint of Nolty Theriot, Inc., 841 F.Supp. 209 (S.D.Tex. 1994).

3

water." Grubart, 513 U.S. at 534; see also 46 U.S.C. § 740. It is undisputed that the harm suffered by the claimants in this case was the result of a car accident on land. It is thus clear that the tort at issue did not occur on navigable waters. Accordingly, in order to satisfy the location test, TCI would have to show that the "injury suffered on land *was caused by* a vessel on navigable waters." Id. Courts, in interpreting the language of the Admiralty Extension Act, have read the "caused by" language of the statute to require the traditional tort law concept of "proximate cause." Margin v. Sea-Land Services, Inc., 812 F.2d 973, 976 (5th Cir. 1987)("The vessel or its defective appurtenances must be the proximate cause of the accident. This court has refused to extend the reach of the Act absent proximate cause"); See also Grubart, 513 U.S. at 536 ("The Act uses the phrase 'caused by,' which more than one Court of Appeals has read as requiring what tort law has traditionally called 'proximate causation.'").

There is simply no evidence in the record that the vessel or anything that happened aboard the ship had anything to do with a car accident that happened on land miles away. It therefore cannot be said that anything related to the ship proximately caused this car accident. As claimants point out, the facts of this case are substantially identical to Theriot where the court found the location element lacking and dismissed for lack of jurisdiction. In Theriot, crewmembers were injured in a car accident on their way to the vessel for a crew change. Like the present case, the crewmembers in Theriot had yet to even board the ship. Using language equally applicable to the case at bar, the Theriot court held, "The locality element is not present since the accident was on land in an ordinary non-maritime activity, about twenty miles from the waterway and the ship." Theriot, 841 F.Supp. at 211. See also In re Madison Coal & Supply Co., Inc., 321

4

F.Supp.2d at 813 (finding "the alleged proximate cause relationship... to be tenuous at best" when the vessel itself had no part in the automobile accident that occurred on land).

Moreover, this case is distinguishable from other cases where courts have asserted admiralty jurisdiction in cases involving land-based car accidents. Generally speaking, in those cases the connection to the vessel is more substantial than it is here. Duluth Superior Excursions, Inc. v. Makela, for example, involved a car accident that was caused by a passenger who became intoxicated on a "booze cruise." 623 F.2d 1251 (8th Cir. 1980). Shortly after disembarking the ship, the allegedly intoxicated passenger struck another passenger as he crossed the street near the boat. Id. At 1254. The court found that the causal sequence of events that began on board the ship and ended on land was sufficient to find causation for jurisdictional purposes under the Extension of Admiralty Jurisdiction Act. Id.; see also Their v. Lykes Bros., Inc. 900 F.Supp. 864 (S.D.Tex. 1995) (finding jurisdiction under the Extension of Admiralty Jurisdiction where chief officer of vessel caused car accident after becoming intoxicated on board the ship). There is no such causal relationship in this case. This case is also distinct on location grounds from In the Matter of Masco Operators, Inc., 1996 WL 571778 (E.D.La. 1996), an unpublished decision from this district that TCI relies upon heavily in its opposition to claimants' motion. In Masco, the court took admiralty jurisdiction in a case involving a car accident on land. In that case, however, the court emphasized that the ship at issue was "docked in Louisiana *in mid-voyage*" and that the crewmembers involved in the accident were "*on a specific mission of purchasing groceries for the vessel.*" Masco, 1996 WL 571778, at *1 (emphasis added). In finding jurisdiction, the Masco court specifically distinguished Theriot on grounds that Theriot did not involve a "land-based

5

errand during a port call in mid voyage." Id. at *2 (quoting Theriot, 841 F.Supp.at 211).[3] Because the facts of the present case are nearly identical to those of Theriot, and thus also did not involve a land-based errand during a port call in mid-voyage, Masco is similarly distinguishable.

TCI suggests that "it is premature to determine whether the transit to the LILLY being made by [claimants] constituted the beginning of a voyage, or whether the contractual obligations of the LILLY constituted a single voyage with multiple departures from the dock to the rig/facilities being serviced." (Rec. Doc. 25, p. 4). In essence, TCI is attempting to bring the facts of this case within the ambit of Masco, as opposed to Theriot, by asserting that the LILLY was *technically* already in mid-voyage given its "contractual obligations" when the claimants were driving towards it. Even if TCI could somehow show that the LILLY's travel plans should be construed as one voyage, this Court's conclusion that admiralty jurisdiction does not exist remains unshaken for two reasons. First, simply redefining the nature of the voyage goes no further in terms of establishing that something having to do with the vessel proximately caused this car accident. The fact remains that – unlike every case that has found the location test satisfied in a case involving a land-based car accident – claimants had not yet been on the ship and were doing nothing more than driving towards it when the accident happened. At most, one could argue that *but for* the fact that claimants were driving to board the vessel, the accident would not have happened. Basic tort principles make clear that this falls far short of establishing proximate cause, however one defines the nature of the

---

[3] Indeed, the Theriot court itself carved out an exception to its own rule noting, "[i]f the car wreck had been while on a land-based errand during a port call in mid voyage, the physical connection to the sea might be said to exist. . . ." In asserting admiralty jurisdiction, the Masco court was simply invoking Theriot's exception. That exception is not applicable in this case.

voyage. Second, it is not clear that TCI's conjectured "contractual obligations" argument actually distinguishes this case from Theriot at all. As described by the court in Theriot, the automobile involved in the accident in that case was transporting crewmembers to a port in Texas "*where [the crewmembers] would join in a crew change of Theriot's vessel.*" Theriot, 841 F.Supp. at 210 (emphasis added). The facts imply that the ship in that case may well have been docking to change crews in the midst of a longer journey, which made no difference to the Theriot court's jurisdictional analysis.[4] In short, Masco, which took advantage of a narrow exception created in Theriot for "land-based errands during a port call in mid voyage," could not support finding jurisdiction in a case where a routine car accident occurred far from the vessel before the crewmembers had even set foot on the ship.[5]

### B. Connection Test

Even assuming *arguendo* that TCI could satisfy the location test, it has failed to meet the requirements of the connection test. The connection test flows from the Supreme Court admiralty jurisprudence culminating in its opinion in Sisson. The test has two parts. First, a court must "assess the general features of the type of incident involved

---

[4] The Court acknowledges that there is no evidence that the Theriot court specifically considered an argument analogous to the one made here by TCI.

[5] TCI argues that "if the Court should conclude that the allegations of the Complaint do not sufficiently delineate the basis for admiralty jurisdiction in this matter, TCI should be given leave to amend to more fully explicate the basis for jurisdiction consistent with the holding in Masco." (Rec. Doc. 25, p. 5). The Court notes, as a threshold matter, that TCI raises this as an argument in their opposition to claimants' Motion to Dismiss. There is no motion for leave to amend presently before the Court. Furthermore, there is no indication of the possible existence of any concrete facts that such an amended complaint might contain that could conceivably affect this Court's jurisdictional analysis. As noted above, the Court finds that an amended complaint containing facts that support TCI's "contractual obligations" argument would not change the outcome of the jurisdictional question so it would be futile. See Addington v. Farmer's Elevator Mutual Insurance Co., 650 F.2d 633 (5th Cir. 1981) ("Clearly, if the complaint as amended would still be subject to dismissal, no abuse of discretion occurs when amendment is denied.").

7

to determine whether the incident has a potentially disruptive impact on maritime commerce." Grubart, 513 U.S. at 534 (quoting Sisson, 497 U.S. at 363-64)(internal citations and quotations omitted). Second, "a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. (quoting Sisson, 497 U.S. at 364-65)(internal citations and quotations omitted). See Sisson, 497 U.S. at 362-67. In applying the two-part Sisson inquiry, courts must bear in mind that "protecting commercial shipping is at the heart of admiralty jurisdiction." Id. at 362. TCI has failed to show how asserting jurisdiction over a case involving this routine car accident furthers the federal interest in protecting maritime commerce. The case must therefore be dismissed.

The first Sisson inquiry requires this Court to "assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce." Grubart, 513 U.S. at 534 (quoting Sisson, 497 U.S. at 363-64)(internal citations and quotations omitted). Sisson requires that the Court first describe the incident "at an intermediate level of possible generality" in order to determine whether the "general features" of the incident were "likely to disrupt commercial activity." Id. at 538. In Grubart, for example, the Supreme Court considered whether it had admiralty jurisdiction over a case where flooding from the Chicago River had caused damage in the basements of buildings in downtown Chicago. The flood was allegedly caused by a "crane, sitting on a barge in the river next to a bridge" which was used to drive piles into the riverbed above a freight tunnel which later collapsed, causing water to flow through the tunnel into certain buildings. Id. at 529-30. In considering whether the incident had a potentially disruptive impact on maritime commerce, the

8

Court first described the incident as *"damage by a vessel in navigable water to an underwater structure."* Id. at 539 (emphasis added). It then described how the incident had disrupted maritime commerce, noting that "after the flood, the river remained closed for over a month, river traffic ceased, several commuter ferries were stranded and many barges could not enter the river system . . . because the river level was lowered to aid repair efforts." Id. (quoting district court findings as described in Petition for Certiorari). Here, this Court finds that the "general features" of the incident at issue in this case are best described as *a land-based automobile accident involving temporarily off-duty crewmembers on their way to a vessel to begin their duties on the ship.* So characterized, it is difficult to imagine how this kind of incident could potentially disrupt maritime commerce in ways akin to those discussed in Grubart.

Under the second Sisson inquiry, this Court looks to "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." Id. The Grubart Court explained:

> We ask whether a tortfeasor's activity, commercial or noncommercial, on navigable waters is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand. Navigation of boats in navigable waters clearly falls within the substantial relationship, Foremost, 457 U.S. at 675; storing them at a marina on navigable waters is close enough, Sisson, 497 U.S. at 367; whereas in flying an airplane over the water, Executive Jet, 409 U.S. at 270-271, as in swimming, id. at 255-256, the relationship is too attenuated.

Grubart, 513 U.S. at 540.

In Grubart itself, the activity at issue was described as "repair or maintenance work on a navigable waterway performed from a vessel" which was held to be unquestionably

9

"substantially related to traditional maritime activity." Id. The activity involved in the case *sub judice* is best characterized as *an off-duty vessel crewman operating an automobile on land, allegedly negligently*. Like other courts evaluating similar activity, this Court finds such behavior is not substantially related to traditional maritime activity. See, e.g., In re Madison Coal & Supply Co., Inc. 321 F.Supp.2d at 814 ("[A]n off-duty vessel crewman operating an automobile, on land, while intoxicated . . . without question, *is not substantially related* to traditional maritime activity")(emphasis in original).

As to the Sisson inquiries, TCI's principal case, Masco, is once again distinguishable. The Masco court described the activity involved in that case as "the process of obtaining supplies, groceries in this case, for a vessel in mid-voyage" which the court found to be substantially related to a traditional maritime activity. Masco, 1996 WL 571778, at *2. Generally speaking, the court thus described the activity at issue as a specific errand that was undertaken purely in furtherance of a particular vessel's ongoing voyage. As described, the activity was thus clearly related to what is undeniably a traditional maritime activity; that is, sailing a vessel on navigable waters. This Court acknowledges that there is some flexibility in the manner in which the activity at issue can be described and that such descriptions can be dispositive of the inquiry itself. Indeed, the Supreme Court recognized that "there is inevitably some play in the joints in selecting the right level of generality when applying the Sisson test. . . ." Grubart, 513 U.S. at 542. But the only reason this case even remotely involves anything maritime is that the car which had the accident was on its way to a ship, which is insufficient to confer admiralty jurisdiction. See In re Complaint of Luhr Bros., Inc., 100 F.Supp.2d 1156, 1161 (E.D.Mo. 2000) ("The fact that the vehicle had crewmembers returning home

10

after their shift on board a vessel does not bear a sufficient relation to any traditional maritime activity to fall under admiralty jurisdiction"). To describe what is otherwise nothing more than an ordinary car accident in such a way that it appears related to a traditional maritime activity would require this Court to take poetic license it is unauthorized to take.

TCI cannot satisfy either the location and or connection tests and has thus failed to carry its burden of demonstrating that admiralty jurisdiction exists in this case.

Accordingly,

**IT IS ORDERED** that claimants' Motion to Dismiss Complaint for Lack of Subject Matter Jurisdiction (Rec. Doc. 23) is **GRANTED**.

New Orleans, Louisiana, this 8th day of March, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

11